UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH PERRY, ERIN LANE,
SUHAIMA CHOUDHURY and
AIMEE DOOLING,

    Plaintiffs,                                Case No. 14-

-vs-

                                              Hon.

RANDSTAD GENERAL
PARTNER (US) LLC,

    Defendant.

---

Barry S. Fagan  (P34275)
Jennifer L. McManus (P65976)
DIB AND FAGAN, P.C.
Attorney for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
bfagan@dibandfagan.com
jmcmanus@dibandfagan.com

Robert W. Kelley
John J. Uustal
Jordan Lewis
KELLEY UUSTAL
Attorney for Plaintiff
Courthouse Law Plaza
700 S.E. 3rd Ave., Ste. 300
Fort Lauderdale, FL 33316
(954) 522-6601
rwk@kulaw.com
jju@kulaw.com
jml@kulaw.com

---

**COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out of the transaction or occurrence
alleged in the Complaint.

NOW COME plaintiffs JUDITH PERRY, ERIN LANE, SUHAIMA CHOUDHURY and AIMEE DOOLING, by and through their attorneys, after inquiry reasonable under the circumstances, on behalf of themselves and all others similarly situated, allege as follows:

### INTRODUCTION

**1.** This is a misclassification overtime case. Plaintiffs are all adults residing and working within this judicial district and – during the relevant time – worked as account managers for defendant Randstad General Partner (US) LLC. Randstad devises various job titles to perform essentially the same function. The titles Randstad uses are, among others: account managers, senior account managers, recruiters, staffing consultants, senior staffing consultants, talent acquisition specialists, agents, staffing agents, business development consultants, executive consulting managers, project executives, staffing managers, recruiting managers/executives, account executives, associates, coordinators, client delivery managers, project executives and sales managers.

**2.** Despite the wide variance in title, all of these jobs have essentially the same function and description. They all recruit for and service the temporary labor,

temporary-to-permanent, and permanent labor that Randstad provides to its corporate customers. They also recruit and service Randstad's corporate clients who they then match with the temporary labor, temporary-to-permanent, and permanent labor. These jobs are highly regulated and conscripted; Randstad has developed a detailed uniform matrix of minute job activities that must be performed by these job titles on a weekly basis to get paid their full salary. To keep their jobs, employees are required to maintain a 100-point average of metrics per week.

3. Employees "clock in" to Randstad by logging in to the company's internal website. The job activities cannot be performed without logging in, and thus Randstad has a detailed, to-the-minute record of the hours worked for each of the employees for each week worked.

4. Employees regularly work between 50 to 60 hours weekly for Randstad, far above the 40 hour threshold after which federal law mandates overtime be paid.

5. Despite this requirement, and despite the fact that Randstad has accurate weekly records of employees' work hours, Randstad willfully does not pay overtime.

6. Accordingly, plaintiffs, on their own behalf and on behalf of all those similarly situated, seek to recover those their overtime, based on a time-and-a-half

calculation, earned beginning three years back from the commencement of this lawsuit.

## JURISDICTIONAL ALLEGATIONS

7. Plaintiff Judith Perry is an individual residing in the City of Commerce Township, County of Oakland, State of Michigan.

8. Plaintiff Erin Lane is an individual residing in the City of Romeo, County of Macomb, State of Michigan.

9. Plaintiff Suhaima Choudhury is an individual residing in the City of Sterling Heights, County of Macomb, State of Michigan.

10. Plaintiff Aimee Dooling is an individual residing in the City of Algonac, County of Saint Clair, State of Michigan.

11. Defendant Randstad General Partner (US) LLC is a for-profit company incorporated in the State of Delaware, with business operations throughout the State of Michigan and nationwide. In this Complaint, "Randstad" refers to the named defendant and all successor, predecessor, related, parent and subsidiary entities to which these allegations pertain.

12. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question), and the Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq*.

13. The amount in controversy is in excess of $75,000.00, exclusive of interest, costs and attorney fees.

## GENERAL ALLEGATIONS- PERRY

14. Perry, at all times pertinent, was an employee of Randstad.

15. Perry became an employee of Randstad t in February 2012.

16. Perry was employed at Randstad's Troy, Michigan facility.

17. Perry worked as a Staffing Consultant and a Senior Staffing Consultant for Randstad.

18. As a Staffing Consultant and a Senior Staffing Consultant, Perry solicited new business for Randstad.

19. Perry's job duties also included recruiting temporary employees, temporary-to-permanent employees and permanent employees who could then be assigned to fill Randstad's clients' staffing needs.

20. While employed with Randstad, Perry regularly worked in excess of 40 hours per week.

21. While employed with Randstad, Perry was never paid overtime wages for the hours that she worked in excess of 40 hours per week.

22. The failure to pay overtime wages to Perry was willful, in that Randstad was aware of the hours that Perry worked, yet failed to pay her appropriate overtime wages.

## GENERAL ALLEGATIONS- LANE

23. Lane, at all times pertinent, was an employee of Randstad.

24. Lane became an employee of Randstad in January 2012.

25. Lane was employed at Randstad's Troy, Michigan facility.

26. At relevant times, Lane worked as a Talent Acquisition Specialist, Account Manager, and Senior Account Manager for Randstad.

27. As a Talent Acquisition Specialist, Account Manager, and Senior Account Manager, Lane solicited new business for Randstad.

28. Lane's job duties also included recruiting temporary employees, temporary-to-permanent employees and permanent employees who could then be assigned to fill Randstad's clients' staffing needs.

29. While employed as a talent acquisition specialist with Randstad, Lane regularly worked in excess of 40 hours per week.

30. While employed as a talent acquisition specialist with Randstad, Lane was never paid overtime wages for the hours that she worked in excess of 40 hours per week.

31. The failure to pay overtime wages to Lane was willful, in that Randstad was aware of the hours that Lane worked, yet failed to pay her appropriate overtime wages.

## GENERAL ALLEGATIONS- CHOUDHURY

32. Choudhury, at all times pertinent, was an employee of Randstad.

33. Choudhury became an employee of Randstad in April 2012.

34. Choudhury was employed at Randstad's Troy, Michigan facility.

35. Choudhury worked as a Talent Acquisition Specialist for Randstad.

36. As a Talent Acquisition Specialist, Choudhury solicited new business for Randstad.

37. Choudhury's job duties also included recruiting temporary employees, temporary-to-permanent and permanent employees who could then be assigned to fill Randstad's clients' staffing needs.

38. While employed with Randstad, Choudhury regularly worked in excess of 40 hours per week.

39. While employed with Randstad, Choudhury was never paid overtime wages for the hours that she worked in excess of 40 hours per week.

40. The failure to pay overtime wages to Choudhury was willful, in that Randstad was aware of the hours that Choudhury worked, yet failed to pay her appropriate overtime wages.

## GENERAL ALLEGATIONS- DOOLING

41. Dooling, at all times pertinent, was an employee of Randstad.

42. Dooling became an employee of Randstad in December 2011.

**43.** Dooling was employed at Randstad's Troy, Michigan facility.

**44.** Dooling worked as a Staffing Consultant, Account Manager and Senior Account Manager for Randstad.

**45.** As a Staffing Consultant, Account Manager and Senior Account Manager, Dooling solicited new business for Randstad.

**46.** Dooling's job duties also included recruiting temporary employees, temporary-to-permanent employees and permanent employees who could then be assigned to fill Randstad's clients' staffing needs.

**47.** While employed with Randstad, Dooling regularly worked in excess of 40 hours per week.

**48.** While employed with Randstad, Dooling was never paid overtime wages for the hours that she worked in excess of 40 hours per week.

**49.** The failure to pay overtime wages to Dooling was willful, in that Randstad was aware of the hours that Dooling worked, yet failed to pay her appropriate overtime wages.

## GENERAL ALLEGATIONS- RANDSTAD

**50.** Randstad General Partner (US) LLC ("Defendant") is an employment staffing company, engaged in providing temporary employees, temporary-to-permanent employees and permanent employees to businesses throughout the United States.

51. Randstadt employs account managers, recruiters, staffing consultants, senior staffing consultants, talent acquisition specialists, agents, staffing agents, business development consultants, executive consulting managers, project executives, staffing managers, recruiting managers/executives, account executives, assistant branch managers, associates, coordinators, client delivery managers, project executives and sales managers, among others, to sell Randstad's staffing services to potential clients and to recruit temporary employees to fill its clients' staffing needs. In this Complaint, persons with these job titles or with duties similar to such job titles will be called "staffing employees."

52. At all pertinent times, Randstad required its staffing employees to, among other duties, solicit a minimum number of new clients, make a minimum number of connections with potential new clients and temporary employees, and conduct a minimum number of temporary employee interviews per month.

53. At all pertinent times, Randstad also required its staffing employees conduct telephone sales, partake in national marketing campaigns and recruit, interview, retain, coach and develop temporary employees.

54. At all pertinent times, Randstad further required its staffing employees to field calls from temporary employees if they could not appear for an assignment with a client and arrange for coverage of the temporary employees' shifts with the client and place calls to active and inactive clients to see if they have openings for

placements.

55. At all pertinent times, Randstad did not require its staffing employees to have specialized training or college degrees, and Randstad's staffing employees did not have supervisory authority.

56. At all pertinent times, Randstad required its staffing employees to keep track of discrete tasks that they performed throughout the day. Each discrete task was worth an assigned number of points, as laid out in Randstad's Work Planning Index.

57. At all pertinent times, each staffing employee was expected to earn a proscribed number of points per week or per month. Staffing employees were expected to keep track of their point accruals through the use of a Sales and Operational Activity Report.

58. The Sales and Operational Activity Report is maintained through Randstad's intranet and data can only be entered into the Sales and Operational Activity Report while onsite at a Randstad office.

59. To achieve the required number of points per week or per month, staffing employees regularly work in excess of 40 hours per week. It is virtually impossible for staffing employees to meet their proscribed point accrual requirement without working in excess of 40 hours per week.

60. Randstad is subject to FLSA requirements and is an employer within

the meaning of the FLSA. Randstad was the employer of the plaintiffs and all other staffing employees, as described above, because it had the power to hire and fire those employees, it supervised and controlled their work schedules and conditions of employment, it had the authority to set their rates and methods of payment and maintained their employment records.

## NATIONWIDE COLLECTIVE ACTION

**61.** Plaintiffs bring this case on behalf of themselves and all other staffing employees (as defined above) who have worked for Randstad at any time between three years before the commencement of this action and the date of final judgment in this matter.

**62.** Plaintiffs bring this count under 29 U.S.C. § 216(b) of the FLSA. Plaintiffs and the staffing employees are similarly situated in that they are all subject to Randstad's common plan or practice of designating them as exempt from the overtime requirements of the FLSA when in fact their work, as described and defined by Randstad's job descriptions and as required by Randstad, is not exempt.

**63.** The primary duty of plaintiffs and all other staffing employees is not management and therefore Randstad is not entitled to deny them overtime pay under the executive exemption, or any other exemption.

**64.** Staffing employees are rarely, if ever, free from close supervision and

micromanagement by Randstad's management, which controls virtually every aspect of the employees' day-to-day business tasks.

## LEGAL CLAIMS

### Count 1
### Violation of the FLSA

65. Plaintiffs restate and reallege the above allegations as if fully set forth.

66. Plaintiffs' first legal claim is for violation of the FLSA. It arises under 29 U.S.C. §§ 201 *et seq.*

67. Randstad's violation of the FLSA was willful, as Randstad is aware that its staffing employees regularly work in excess of 40 hours per week yet does not pay its staffing employees overtime wages.

68. Plaintiffs and all other similarly situated staffing employees, as described above, who opt into this litigation are entitled to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs seek the following:

A. Certification of the described class under the FLSA;

B. An award of overtime wages under the FLSA;

C. An award of liquidated damages under the FLSA;

D. A declaratory judgment that the practices complained of are unlawful under the FLSA;

E.	Interest and costs;

F.	Attorneys' fees under the FLSA; and

G.	Such other relief as in law or equity may pertain.

## JURY DEMAND

Plaintiffs demand a trial by jury by all issues so triable.

Dated:  March 26, 2014	By: /s/ *Barry S. Fagan*

        Barry S. Fagan  (P34275)
        Jennifer L. McManus (P65976)
        DIB AND FAGAN, P.C.
        25892 Woodward Avenue
        Royal Oak, MI  48067-0910
        (248) 542-6300
        bfagan@dibandfagan.com
        jmcmanus@dibandfagan.com

        Robert W. Kelley
        John J. Uustal
        Jordan Lewis
        KELLEY UUSTAL
        Courthouse Law Plaza
        700 S.E. 3rd Ave., Ste. 300
        Fort Lauderdale, FL 33316
        (954) 522-6601
        rwk@kulaw.com
        jju@kulaw.com
        jml@kulaw.com

        **ATTORNEYS FOR PLAINTIFFS**