# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JUDITH PERRY, ERIN LANE, and
AIMEE DOOLING,

           Plaintiffs,

   v.

RANDSTAD GENERAL PARTNER
(US) LLC,

          Defendant.

Case No. 5:14-cv-11240-JCO-MKM

Judge John Corbett O'Meara
Magistrate Judge Mona K. Majzoub

---

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH,
PLLC
344 North Old Woodward Avenue
Suite 200
Birmingham, Michigan  48009
Telephone:  (248) 864-4000
Facsimile:  (248) 864-4001

Gerald L. Maatman, Jr.
Jennifer A. Riley
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Attorneys for Defendant

---

## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant Randstad General Partner (US) LLC ("Defendant"), by its

attorneys, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby

moves this Court for an order granting summary judgment in its favor on all

remaining claims asserted by Plaintiffs.  In support of this Motion, Defendant

submits the accompanying Memorandum Of Law and Appendix Of Exhibits and

states as follows:

1.    In their Complaint, Plaintiffs assert one Count.  They claim that Defendant violated the Fair Labor Standards Act ("FLSA") by misclassifying them as exempt and failing to pay them overtime compensation.

2.    The undisputed facts, including the testimony of Plaintiffs, demonstrate that Defendant properly classified Plaintiffs Judith Perry, Erin Lane, and Aimee Dooling as exempt employees throughout their employment with Defendant, foreclosing their claims for overtime compensation.

3.    This Court previously entered judgment in Defendant's favor on May 12, 2015 (ECF No. 94), finding that Defendant properly classified Plaintiffs Perry, Lane, and Dooling as exempt under the administrative exemption.

4.    On November 20, 2017, the Sixth Circuit Court of Appeals affirmed in part this Court's judgment.  The Sixth Circuit affirmed the Court's order granting summary judgment to Defendant regarding: (1) Dooling's claim arising out of her time as an Account Manager, (2) Lane's claims arising out of her time as an Account Manager and Senior Account Manager, and (3) Lane's claim arising out of her time an Assistant Branch Manager.  *Perry v. Randstad Gen. Partner (US) LLC*, 876 F.3d 191, 215 (6th Cir. 2017).

5.    The Sixth Circuit remanded the remaining claims for further consideration, including:  (1) Perry's claim relative to her time as a Staffing Consultant and a Senior Staffing Consultant; (2) Dooling's claim relative to her

2

time as a Staffing Consultant; and (3) Lane's claim relative to the time that she held the title of Talent Acquisition Specialist.  *Id*. at 216.

6.    The Sixth Circuit considered only whether the administrative exemption applied to Plaintiffs Perry and Dooling during their employment as Staffing Consultants and Senior Staffing Consultant.  The Sixth Circuit did not consider whether any other exemptions applied to these Plaintiffs during their tenure in these positions.  *Id*. at 212 n.9; *see* ECF No. 124 at 2.

7.    The undisputed testimony of Plaintiffs Perry and Dooling demonstrates that the outside sales exemption applies to their employment as Staffing Consultants and Senior Staffing Consultant and precludes their claims for overtime compensation.  29 C.F.R. § 541.500(a).  Alternatively, the undisputed record shows that, even if the outside sales exemption did not apply, when considered together, the exempt outside sales duties and exempt administrative duties of Plaintiffs Perry and Dooling meet the "combination" exemption.  29 C.F.R. § 541.708.

8.    Moreover, summary judgment is appropriate on the remanded claim of Plaintiff Lane because she testified that, during the brief period of time that she held the title of Talent Acquisition Specialist, she performed the same duties that she performed as Account Manager – duties that this Court and the Sixth Circuit have held qualify her as exempt under the administrative exemption.  ECF No. 94, at 9-10;  *Perry*, 876 F.3d at 209.

9.     Pursuant to Local Rule 7.1(a)(2), on December 12, 2017, counsel for Defendant had a conference with Plaintiffs' counsel, explaining the legal bases of the motion and seeking concurrence in the relief requested herein.  Plaintiffs' counsel did not concur, necessitating the filing of this motion.

10.    On March 1, 2018, the Court granted Defendants' motion for leave to file this Motion.  The Court held that, as the prevailing part in the trial court, Defendant was not required to raise the above issues on appeal and, accordingly, such issues are properly before this Court for its consideration.

WHEREFORE, for the foregoing reasons and the reasons set forth in Defendant's Memorandum of Law in Support of Its Renewed Motion for Summary Judgment, Defendant requests that the Court enter an order granting summary judgment in Defendant's favor and dismissing Plaintiffs' claims in their entirety with prejudice.

DATED:  March 1, 2018

Respectfully submitted,

RANDSTAD GENERAL PARTNER
(US) LLC


By:   /s/ Gerald L. Maatman, Jr.

Jeffrey B. Morganroth
*JMorganroth@morganrothlaw.com*
MORGANROTH & MORGANROTH,
PLLC
344 North Old Woodward Avenue
Suite 200
Birmingham, Michigan  48009-5310
Telephone:  (248) 864-4000
Facsimile:  (248) 864-4001

Gerald L. Maatman, Jr.
*gmaatman@seyfarth.com*
Jennifer A. Riley
*jriley@seyfarth.com*
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

43122979v.4

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JUDITH PERRY, ERIN LANE, and
AIMEE DOOLING,

        Plaintiffs,

     v.

RANDSTAD GENERAL PARTNER
(US) LLC,

        Defendant.

Case No. 5:14-cv-11240-JCO-MKM

Judge John Corbett O'Meara
Magistrate Judge Mona K. Majzoub

---

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH,
PLLC
344 North Old Woodward Avenue
Suite 200
Birmingham, Michigan  48009-5310
Telephone:  (248) 864-4000
Facsimile:  (248) 864-4001

Gerald L. Maatman, Jr.
Jennifer A. Riley
SEYFARTH SHAW LLP
233 South Wacker Dr., Suite 8000
Chicago, Illinois  60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Attorneys for Defendant

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant Randstad General Partner (US) LLC ("Defendant"), by its

attorneys, pursuant to Federal Rule of Civil Procedure 56, hereby respectfully

submits the following Memorandum of Law in Support of Its Renewed Motion for

Summary Judgment.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................3

I.   PLAINTIFFS' EMPLOYMENT WITH DEFENDANT ...........................3

II.  THE FLSA CLASSIFICATION OF PLAINTIFFS........................................4

    A.   Classification Of Plaintiffs .................................................4

    B.   MC Staffing Consultants And MC Senior Staffing Consultants .........4

    C.   Talent Acquisition Specialists................................................7

III. PROCEDURAL HISTORY ..........................................................9

SUMMARY JUDGMENT STANDARD ..................................................12

ARGUMENT ................................................................................13

I.   DEFENDANT PROPERLY CLASSIFIED PERRY, DOOLING,
    AND LANE AS EXEMPT UNDER THE FLSA .........................................13

    A.   The Duties That Perry And Dooling Performed As MC Staffing
        Consultants Satisfy The "Outside Sales" Exemption ........................13

    B.   Alternatively, The Duties That Perry And Dooling Performed
        As MC Staffing Consultants Satisfy The "Combination
        Exemption"........................................................................17

    C.   The Undisputed Evidence Shows That, While Lane Held The
        Title Of TAS, She Worked As An Exempt Account Manager..........21

CONCLUSION ................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ale v. Tenn. Valley Auth.*,
  269 F. 3d 680 (6th Cir. 2001) ...........................................................21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................12, 13

*Andrade v. Aerotek, Inc.*,
  700 F. Supp. 2d 738 (D. Md. 2010)..................................................19

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012)..................................................................14

*Condren v. Sovereign Chem. Co.*,
  No. 97-3091, 142 F. 3d 432, 1998 WL 165148 (6th Cir. Apr. 3,
  1998) .........................................................................17, 18

*Goff v. Bayada Nurses, Inc.*,
  424 F. Supp. 2d 816 (E.D. Pa. 2006)................................................20

*Gold v. New York Life Ins. Co.*,
  730 F. 3d 137 (2d Cir. 2013) .........................................................22

*Gonzales v. Barrett Bus. Servs., Inc.*,
  2006 WL 1582380 (E.D. Wash. June 6, 2006)....................................20

*Hamilton v. Roberts*,
  165 F. 3d 27, 1998 WL 639158 (6th Cir. 1998)................................13

*Hartsel v. Keys*,
  87 F. 3d 795 (6th Cir. 1996) .........................................................13

*Hudkins v. Maxim Healthcare Servs.*,
  39 F. Supp. 2d 1349 (M.D. Fla. 1998).............................................19

*Intracomm, Inc. v. Bajaj*,
  492 F. 3d 285 (4th Cir. 2007) .......................................................17

42697492v.9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................12

*Nielsen v. DeVry, Inc.*,
    302 F. Supp. 2d 747 (W.D. Mich. 2003) ............................................21

*Olivo v. GMAC Mortg. Corp.*,
    374 F. Supp. 2d 545 (E.D. Mich. 2004) .....................................14, 16

*Perry v. Randstad Gen. Partner (US) LLC*,
    876 F.3d 191 (6th Cir. 2017) ......................................................*passim*

*Schmidt v. Eagle Waste & Recycling, Inc.*,
    598 F. Supp. 2d 928 (W.D. Wis. 2009) .....................................14, 16

*Schmidt v. Eagle Waste & Recycling, Inc.*,
    599 F. 3d 626 (7th Cir. 2010) ............................................................18

*Thomas v. Speedway SuperAmerica, LLC*,
    506 F.3d 496 (6th Cir. 2007) .............................................................21

**STATUTES**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ..........................................*passim*

**OTHER AUTHORITIES**

29 C.F.R. § 541.500 ...............................................................................14

29 C.F.R. § 541.500(a) ...........................................................................14

29 C.F.R. § 541.500(b) ...........................................................................14

29 C.F.R. § 541.700(a) ...........................................................................15

29 C.F.R. § 541.700(b) ...........................................................................18

29 C.F.R. § 541.701 ...............................................................................15

29 C.F.R. § 541.708 ...............................................................................17

69 Fed. Reg. 22 122 22 187 (Apr. 23, 2004) ...........................................15

DOL Op. Ltr. FLSA 2005-45, 2005 WL 3308616 (Oct. 25, 2005) ........................19

iii

DOL Wage Hour Op. Ltr. No., FLSA2007-2, 2007 WL 506575 (Jan.
  25, 2007) ................................................................................................14, 15

iv

## E.D. MICH LR 7.1(d)(2)
## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

**A.**  Whether the Court should grant summary judgment for Defendant on the claims of Plaintiffs Perry and Dooling because they were covered by the "outside sales" exemption of the FLSA

    Defendant's Answer:            Yes

    Plaintiffs' Answer:            No

**B.**  Alternatively, whether the Court should grant summary judgment for Defendant on the claims of Plaintiffs Perry and Dooling because they were covered by the "combination" exemption of the FLSA

    Defendant's Answer:            Yes

    Plaintiffs' Answer:            No

**C.**  Whether the Court should grant summary judgment for Defendant on the claim of Plaintiff Lane because she was covered by the "administrative" exemption of the FLSA

    Defendant's Answer:            Yes

    Plaintiffs' Answer:            No

## E.D. MICH LR 7.1(d)(2)
## <u>CONTROLLING / MOST APPROPRIATE AUTHORITIES</u>

**Page(s)**

CASES

*Ale v. Tenn. Valley Auth.*,
  269 F. 3d 680 (6th Cir. 2001) ........................................................... 21

*Andrade v. Aerotek, Inc.*,
  700 F. Supp. 2d 738 (D. Md. 2010) ................................................... 19

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012) ........................................................................... 14

*Condren v. Sovereign Chem. Co.*,
  No. 97-3091, 142 F. 3d 432, 1998 WL 165148 (6th Cir. Apr. 3,
  1998) ........................................................................................... 17, 18

*Goff v. Bayada Nurses, Inc.*,
  424 F. Supp. 2d 816 (E.D. Pa. 2006) ................................................. 20

*Gold v. New York Life Ins. Co.*,
  730 F. 3d 137 (2d Cir. 2013) ............................................................. 22

*Gonzales v. Barrett Bus. Servs., Inc.*,
  2006 WL 1582380 (E.D. Wash. June 6, 2006) .................................. 20

*Hudkins v. Maxim Healthcare Servs.*,
  39 F. Supp. 2d 1349 (M.D. Fla. 1998) ............................................... 19

*Intracomm, Inc. v. Bajaj, LLC*,
  492 F. 3d 285 (4th Cir. 2007) ........................................................... 17

*Nielsen v. DeVry, Inc.*,
  302 F. Supp. 2d 747 (W.D. Mich. 2003) ........................................... 21

*Olivo v. GMAC Mortg. Corp.*,
  374 F. Supp. 2d 545 (E.D. Mich. 2004) ....................................... 14, 16

*Perry v. Randstad Gen. Partner (US) LLC*,
  876 F.3d 191 (6th Cir. 2017) ..................................................*passim*

*Schmidt v. Eagle Waste & Recycling, Inc.,*
    598 F. Supp. 2d 928 (W.D. Wis. 2009) ......................................................14, 16

*Schmidt v. Eagle Waste & Recycling, Inc.,*
    599 F. 3d 626 (7th Cir. 2010) ...........................................................................18

*Thomas v. Speedway SuperAmerica, LLC,*
    506 F.3d 496 (6th Cir. 2007) ...........................................................................21

STATUTES

Fair Labor Standards Act ...................................................................................*passim*

OTHER AUTHORITIES

29 C.F.R. § 541.500 ...........................................................................................14

29 C.F.R. § 541.500(a) .......................................................................................14

29 C.F.R. § 541.500(b) .......................................................................................14

29 C.F.R. § 541.700(a) .......................................................................................15

29 C.F.R. § 541.700(b) .......................................................................................18

29 C.F.R. § 541.701 ...........................................................................................15

29 C.F.R. § 541.708 ...........................................................................................17

69 Fed. Reg. 22 122 22 187 (Apr. 23, 2004) ...........................................................15

DOL Op. Ltr. FLSA 2005-45, 2005 WL 3308616 (Oct. 25, 2005) ........................19

DOL Wage Hour Op. Ltr. No., FLSA2007-2, 2007 WL 506575 (Jan.
    25, 2007) .........................................................................................................14, 15

## **INTRODUCTION**

The Sixth Circuit affirmed this Court's conclusion that the administrative exemption applied to Plaintiffs' work as Account Managers but remanded for further consideration of Plaintiffs' claims relative to work they performed as Staffing Consultants (Perry and Dooling) and Talent Acquisition Specialists (Lane). *See Perry v. Randstad Gen. Partner (US) LLC,* 876 F.3d 191 (6th Cir. 2017). Whereas, according to the Sixth Circuit, the duties performed by Plaintiffs as Staffing Consultants may not have qualified them for the administrative exemption as a matter of law, the undisputed record makes clear that: (1) the outside sales duties admittedly performed by Perry and Dooling as Staffing Consultants qualified them for application of the outside sales exemption and combination exemption; and (2) the Account Manager duties admittedly performed by Lane as a Talent Acquisition Specialist ("TAS") qualified her for application of the administrative exemption. This Court, therefore, should enter summary judgment in favor of Defendant on Plaintiffs' remaining claims for multiple reasons.

First, the duties that Perry and Dooling admitted that they performed as Staffing Consultants easily satisfy the outside sales exemption. Plaintiffs admitted that they regularly performed sales duties outside of the office, such as going door-to-door to make sales and visiting prospects. These activities bring them squarely

within the "outside sales" exemption and render judgment on their remaining claims appropriate as a matter of law.

Second, even if Plaintiffs' sales duties were not sufficient to support their exempt status as a matter of law (which they are), their sales duties, coupled with their exempt staffing duties, are sufficient to satisfy the "combination" exemption as a matter of law. Plaintiffs admitted that, when they were not performing duties related to outside sales, they conducted other exempt work, including determining what candidates were the "best fit" for their clients, such that they spent a majority of their time on exempt activities, bringing them squarely within the combination exemption.

Third, the undisputed evidence shows that the duties performed by Lane while she briefly held the title of TAS satisfy the administrative exemption. Whereas Defendant classifies the TAS position as non-exempt, Lane admitted that, during the "three or four weeks" she held "that title in the HR computer . . . until they fixed it," she did not work as a TAS. Rather, Land admitted that the duties that Lane performed under the TAS title were no different than the duties she performed as Account Manager. This Court and the Sixth Circuit already have found that such duties satisfy the administrative exemption.

The undisputed facts, therefore, establish that Defendant properly classified the Plaintiffs as exempt throughout their employment. Because Plaintiffs

2

themselves admitted that they performed primary work activities that fit within

exemptions to the Fair Labor Standards Act ("FLSA"), summary judgment is

appropriate on their claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

## I.    PLAINTIFFS' EMPLOYMENT HISTORY WITH DEFENDANT

Defendant is a leading staffing company that provides recruiting and staffing

solutions to clients across a variety of industries.  (Ex. A, Ferguson Decl. ¶ 2.)[1]

Plaintiffs worked for Defendant at the same branch in Troy, Michigan, which

focuses on placing temporary employees – or "talent" – in various office and

administrative roles.  (*See* Ex. B, Perry Dep. at 250:17-251:11; Ex. C, Lane Dep. at

39:21-40:4, 210:4-6; Ex. D, Dooling Dep. at 75:20-23.)  Defendant acquired the

branch from Today's Office Professionals in a merger with former competitor

Spherion Staffing Services in 2011.  (Ex. F, Ferguson Dep. at 9:13-10:10; Ex. G,

Tremble Dep. at 64:11-13.)

Over the course of their employment with Defendant, Plaintiffs held six

positions in Defendant's Mass Customized ("MC") product line.  (Ex. A, Ferguson

Decl. ¶ 4.)  Plaintiff Lane worked as an MC Assistant Branch Manager; Plaintiffs

Lane and Dooling worked as MC Account Managers/MC Senior Account

Managers; Plaintiffs Perry and Dooling worked as MC Staffing Consultants; and

---

[1] All exhibits cited herein are attached to the Appendix of Exhibits filed
contemporaneously herewith.

3

Plaintiff Perry worked as an MC Senior Staffing Consultant.  (*See* Ex. A, Ferguson Decl. ¶ 4; Ex. B, Perry Dep. at 35:13-16; Ex. C, Lane Dep. at 29:23-25; 225:22-226:25; Ex. D, Dooling Dep. at 18:14-24.)  In addition, Lane held the title of Talent Acquisition Specialist "in the HR computer" for "three or four weeks." (Ex. C, Lane Dep. at 13:18-14:3.) [2] Their base pay ranged from $32,000 to $48,125.  (*See* Ex. B, Perry Dep. at 41:18-20, 239:11-19; Ex. C, Lane Dep. at 11:14-16; Ex. D, Dooling Dep. at 26:8-18.)

## II.    THE FLSA CLASSIFICATION OF PLAINTIFFS

### A.    Classification Of Plaintiffs

Perry, Dooling, and Lane claim that Defendant classified them as exempt from the requirements of the FLSA throughout their employment.  (Ex. A, Ferguson Decl. ¶ 11; Ex. F, Ferguson Dep. at 24:11-25:12, 32:13-18, 38:15-39:9; 42:4-16.)  Each of the Plaintiffs contends that Defendant paid her on a salary basis, plus commission and bonuses, and not as an hourly employee.  (*See* Ex. B, Perry Dep. at 241:14-243:2; Ex. C, Lane Dep. at 24:18-25; Ex. D, Dooling Dep. at 155:25-156:6.)

### B.    MC Staffing Consultants And MC Senior Staffing Consultants

As MC Staffing Consultants, Plaintiffs Perry and Dooling were responsible

---

[2] Because Plaintiffs all worked in the MC product line, they are sometimes referred to herein as "Account Managers," "Senior Account Managers," "Staffing Consultants," "Senior Staffing Consultants," and "Assistant Branch Managers."

4

for the local retail business.  (Ex. D, Dooling Dep. at 80:24-81:7.)[3] They were

responsible for both finding and servicing new clients, and they spent about half of

their time engaged in sales activities and the rest of their time engaged in recruiting

and staffing duties for such clients.  (*Id.* at 50:8-14.)  Because Staffing Consultants

must bring in new business, service existing clients, and recruit and interview

candidates, the position is a "360 desk," meaning "you do everything from the

beginning to the end," "sort of like your own business."  (Ex. B, Perry Dep. at

52:21-53:11.)

     With respect to the sales activities, as MC Staffing Consultants, Perry and

Dooling were responsible for making sales to new clients through a variety of

means, including attending networking events, knocking on doors, cold calling,

sending marketing pieces to existing clients, and following up with existing clients

to see "if they had anything coming up."  (*Id.* at 76:6-79:21; Ex. D, Dooling Dep.

at 92:10-25.)  To make sales to new clients, Plaintiffs Perry and Dooling regularly

spent time outside of the office visiting prospective clients with the express goal to

"make sales."  (Ex. B, Perry Dep. at 92:1-93:14; Ex. D, Dooling Dep. at 102:17-

104:16.)  Plaintiff Perry spent on average "approximately five hours visiting

prospects every week" outside of the office.  (Ex. B, Perry Dep. at 92:1-23.)  Perry

---

[3] Perry did not believe that her job duties changed as a result of her promotion to
Senior Staffing Consultant.  (Ex. B, Perry Dep. at 106:4-7, 198:15-20.)
Accordingly, for purposes of this motion only, Defendant treats the positions
together.

also spent time outside the office attending networking events in order to identify "prospects for making sales." (*Id.* at 77:17-78:1, 99:10-19.)

In addition to meeting with prospective clients to make sales, according to Perry and Dooling, as MC Staffing Consultants, they had to identify prospective clients to build their own base of business. (*Id.* at 82:5-83:18.) Perry testified that, when she was in the office, she generally spent two or more hours per day identifying prospective clients, adding the prospective clients to Defendant's system, and then calling prospective clients. (*Id.* at 86:18-87:14.) Finding new clients required "looking behind trees and under rocks, looking where other people haven't looked." (*Id.* at 182:2-12.)

With respect to the recruiting and staffing duties, according to Plaintiffs, the duties they performed as Staffing Consultants were "[v]ery similar" to the recruiting and staffing duties Plaintiffs performed as Account Managers. (Ex. D, Dooling Dep. at 79:3-6.) As Staffing Consultants, Plaintiffs sourced candidates online (*see, e.g.,* Ex. B, Perry Dep. at 125:23-127:13), wrote job descriptions, (*id.* at 128:25-129:25), conducted phone screens, (*id.* at 141:5-142:7), made the ultimate "judgment call" about which candidates to interview in person, (*id.* at 143:12-144:13), and assessed which candidates would be the "best fit" for the client (*id.* at 156:12-157:10).

6

### C.    Talent Acquisition Specialists

For "probably three or four weeks" following Defendant's acquisition of Lane's previous employer, Today's Office Professionals, Lane held the title of TAS while Defendant calibrated the functions performed by Lane with Defendant's existing job titles.  (Ex. C, Lane Dep. at 13:7-14:3.)  As Lane testified, she "started out as a talent acquisition specialist . . . even though that was not what [her] job description reflected.  Just all of us that were transferred over were given that title in the HR computer to begin with, until they fixed it."  (*Id.*)  During the time Lane held the TAS title, she did not work as a TAS; rather, Lane performed duties consistent with her Account Manager role.  (*Id*. at 37:2-38:4.)  In fact, Lane testified that, when her titled changed from TAS to Account Manager, her duties remained the same.

> Q.    Okay. What were your duties as -- well, strike that.  When you became an account manager, how did that change come about?
>
> A.    I was instructed that that was going to be my official title now that we were Randstad.  Since we had figured out with the conversion how everything was going to convert over.  Which included most of the things I was used to doing by handling accounts.  . . .
>
> Q.    Did you consider the change to account manager a promotion?
>
> A.    No.
>
> Q.    Why not?

42697492v.9

A.      It was the same duties that I was doing in concept before.  I just received a pay increase, which was something that as I was coming up on an anniversary anyways that my boss was trying to do.

Q.      Why do you say in concept?

A.      I was still recruiting and handling payroll, handling hiring paperworks, interviewing, working with clients, everything that I was used to doing on the Todays side.  Nothing changed other than the way that Randstad structured it.

(*Id.* at 37:2-38:10.)

According to Lane, as an Account Manager, clients communicated their staffing needs directly to her (*id.* at 117:25-118:13), and after determining the client's needs, she handled the entire process of sourcing, recruiting, and hiring candidates to meet each particular client's needs, including:

- Developing strategies to "source candidates" for specific positions using social media and Plaintiffs' own "candidate pool" consisting of previous placements and other contacts.  (*Id.* at 106:2-19; 111:13-112:18.)

- Writing job descriptions and posting positions as Plaintiffs deemed appropriate.  (*Id.* at 113:11-115:4; 117:3-13.)

- Working with the client to set the rate of pay based on Plaintiffs' understanding of the market, sometimes giving clients "stern" directions regarding the appropriate rate if the client is below market.  (*Id.* at 115:10-116:24; 146:15-147:12.)

- Conducting phone screens and in-person interviews loosely following a "general format," but ultimately deciding which questions to ask and which candidates to present to the client.  (*Id.* at 119:12-122:22.)

- Administering various office skills tests, selected by Plaintiffs from the "thousands of tests" available.  (*Id.* at 123:11-22.)

8

- Assessing which candidate would be the best "fit" for a particular client, recognizing that all clients are "very different." (*Id.* at 129:2-130:8.)

In addition to recruiting, Lane testified that, as an Account Manager, she also handled the hiring and day-to-day management of the talent she placed with clients, including:

- Checking in with talent and client managers to address any concerns about the talent's fit with the client. (*Id.* at 149:8-151:3.)

- Counseling talent regarding any concerns about the job, reaching out to the client or resolving the concern directly with the talent as Plaintiffs deemed appropriate. (*Id.* at 151:4-16.)

- Fielding questions regarding pay and negotiating raises when appropriate. (*Id.* at 143:3-145:11.)

- Overseeing performance and discipline of talent placed with the client, including personally coaching talent, administering discipline, and terminating placements on average "at least once a week." (*Id.* at 137:18-140:24.)

As an Account Manager, Lane also was responsible for "proactively developing and managing existing relationships with a diverse client mix." (*Id.* at 50:21-51:6.)

## III.   PROCEDURAL HISTORY

On December 1, 2014, Defendant moved this Court for summary judgment on Plaintiffs' FLSA "misclassification" claims. (ECF No. 54.) Defendant argued that the undisputed facts demonstrated that it properly classified Perry, Dooling, and Lane as exempt, which foreclosed their FLSA claims for allegedly unpaid overtime wages. Specifically, Defendant argued that the duties performed by Perry

and Dooling as Staffing Consultants met the requirements of the administrative exemption, the outside sales exemption, and, alternatively, the "combination" exemption. (*Id*. at 28-33, 35-37.) Neither Defendant nor Plaintiffs addressed Lane's duties during the one-month period in which she held the title of TAS.

On May 12, 2015, the Court granted Defendant's motion and entered judgment in favor of Defendant and against Plaintiffs Perry, Dooling, and Lane. (ECF No. 94.)[4] In particular, the Court held that Plaintiffs Perry, Dooling, and Lane, who worked as Account Managers, Assistant Branch Managers, and Staffing Consultants, qualified as exempt under the administrative exemption. (*Id*. at 9-10.) The Court did not reach Defendant's arguments with respect to the outside sales exemption or the combination exemption, and the Court did not address the brief period during which Lane held the title of TAS.

On appeal, the Sixth Circuit affirmed this Court's holding that the duties that Perry, Dooling, and Lane performed during their employment as Account Managers and Assistant Branch Managers qualified them for the administrative exemption as a matter of law. *Perry*, 876 F.3d at 215. In particular, the Sixth Circuit agreed that "matching candidates to clients based on fit – meaning subjective criteria such as the match between a candidate's personality and a

---

[4] The Court found that an issue of fact existed with respect to Plaintiff Suhaima Choudhury. (ECF No. 94, at 11-12.) Choudhury's claims were later resolved and voluntarily dismissed.

10

client's corporate culture . . . involves meaningful discretion and independent judgment. . . . So, too, does independently drafting job descriptions, deciding which recruitment tools to use, negotiating how much to pay the worker and how much to bill the client (even without ultimate decision-making authority), and counseling workers and otherwise dealing with unsuccessful placements." *Id.* at 208.

With respect to the time that Plaintiffs Perry and Dooling occupied the position of Staffing Consultant, however, the panel majority found that such duties were not necessarily their primary function. The Sixth Circuit noted that "Perry testified that her most important duty as a Staffing Consultant was 'selling Randstad services,' not matching candidates to clients." (*Id.* at 210.) The Sixth Circuit determined that Dooling spent "50 percent of [her] time" on sales duties and spent the rest of her time "on a mix of exempt and non-exempt recruiting and matchmaking duties" and that Perry "spent at least five hours per day on sales activities, perhaps more." (*Id.* at 212.)

The Sixth Circuit expressly declined to consider whether the extensive sales work conducted by Perry and Dooling during their employment as Staffing Consultants qualified them for application of the outside sales or combination exemptions. *Id.* at 212 n.9. Indeed, the panel majority noted that, although Defendant had raised the outside sales and combination exemptions on summary

11

judgment, the District Court had not addressed those exemptions, and Plaintiffs did not raise them on appeal.  *Id.* at 196 n.3.

The Sixth Circuit noted that Lane held the title of TAS during a portion of her employment with Defendant.  Although Plaintiffs did not appeal the District Court's decision with respect to this issue, and neither party raised an issue about Lane's duties or status as a TAS on appeal, the Sixth Circuit noted that Defendant classified the TAS position as non-exempt and, therefore, reversed the Court's ruling to the extent it entered judgment on Lane's exempt status during this one-month period.  *Id*. at 208.  The Sixth Circuit expressly acknowledged that it did not analyze Lane's duties during the time she occupied the title of TAS.  *Id*.

On December 12, 2017, the Sixth Circuit issued its general mandate in this case, remanding it to this Court for further proceedings.  (Case No. 16-1010, ECF. No. 37.)

## SUMMARY JUDGMENT STANDARD

Plaintiffs' admissions foreclose their claims against Defendant, making summary judgment appropriate on the remanded claims.  The mere existence of one or more factual disputes between the parties will not defeat a motion for summary judgment if the disputed issues are not material.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  For an issue of fact to be material, it must be outcome determinative.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

12

*Corp*., 475 U.S. 574, 586-88 (1986).  Under this standard, the non-moving party

must present more than a scintilla of evidence to defeat the motion.  *Anderson*, 477

U.S. at 251.  It is well settled that a plaintiff cannot evade summary judgment by

making bare allegations, but must instead produce evidence.  *Hamilton v. Roberts*,

165 F. 3d 27, 1998 WL 639158, at *5 (6th Cir. 1998); *see also Hartsel v. Keys*, 87

F. 3d 795, 804 (6th Cir. 1996) (stating that mere subjective, vague or conclusory

allegations are insufficient to preclude summary judgment).  Plaintiffs cannot

demonstrate a material issue of disputed fact sufficient to preclude summary

judgment on their remaining claims.

## **ARGUMENT**

The record evidence here demonstrates that, under the applicable standard,

Defendant is entitled to summary judgment on the remanded claims of Plaintiffs

Perry, Dooling, and Lane.

## I.    DEFENDANT PROPERLY CLASSIFIED PERRY, DOOLING, AND LANE AS EXEMPT UNDER THE FLSA

### A.    The Duties That Perry And Dooling Performed As MC Staffing Consultants Satisfy The "Outside Sales" Exemption

Summary judgment is appropriate on the remanded claims of Perry and

Dooling because the undisputed evidence demonstrates that the outside sales

exemption applies to their work as Staffing Consultants.

The outside sales exemption applies to any employee:  (i) whose "primary

duty" is "making sales"; and (ii) "who is customarily and regularly engaged away

from the employer's place or places of business in performing such primary duty."
29 C.F.R. § 541.500(a).  An employee meets the outside sales exemption if her
primary duty is either "making sales" or "obtaining orders or contracts for services."
29 C.F.R. § 541.500; *see Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142,
165 (2012) (interpreting "sales" broadly and holding that obtaining non-binding
commitments from physicians to prescribe particular drugs qualifies as "sales"
under the FLSA).

If an employee conducts outside sales, any "work that furthers the
employee's sales efforts also shall be regarded as exempt work."  *Id*. § 541.500(b).
Such incidental exempt duties can encompass "a wide variety of marketing efforts
including creating customer contact cards and promotional materials, following up
with customers, scheduling appointments" and other similar tasks.  DOL Wage
Hour Op. Ltr. No., FLSA2007-2, 2007 WL 506575, at *14 (Jan. 25, 2007); *see
Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 551 (E.D. Mich. 2004)
(finding mortgage officers exempt where "much of the time spent at the office
[was] devoted to following up on contacts and leads generated during outside sales
visits"); *Schmidt v. Eagle Waste & Recycling, Inc.*, 598 F. Supp. 2d 928, 936 (W.D.
Wis. 2009) (finding plaintiff exempt where plaintiff engaged in direct sales as well
as duties incidental thereto, including designing marketing and promotional
materials, attending social functions, and engaging in customer service activities).

14

"The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant" and "includes work normally and recurrently performed every workweek."  29 C.F.R. § 541.701.  The Department of Labor ("DOL") made clear when implementing the regulations that "[n]othing in this section requires that, to meet the definition of 'customarily and regularly,' a task be performed more than once a week or that a task be performed each and every workweek."  *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22 122 22 187 (Apr. 23, 2004).  The DOL has found that performing sales outside the office "one or two hours a day, one or two times a week" is sufficiently regular and customary to satisfy the second requirement of the exemption.  DOL Wage Hour Op. Ltr. No., FLSA2007-2, at *14.

Perry and Dooling admitted that, as Staffing Consultants, their primary duties included making sales.  Indeed, their responsibilities as Staffing Consultants included "develop[ing] sales [and] continuously establishing new clients to develop business."  (Ex. B, Perry Dep. at 50:12-51:7; Ex. E, Staffing Consultant Job Description.)  Perry testified that sales was the most important part of her job.  (Ex. B, Perry Dep. at 76:2-5)  *See* 29 C.F.R. § 541.700(a).  Dooling testified that

15

she spent 50% of her time as a Staffing Consultant engaged in sales activities.[5] (Ex. D, Dooling Dep. at 50:8-14.)[6]

Perry and Dooling admitted that, as Staffing Consultants, they spent several hours making sales outside the office each week, including "approximately five hours visiting prospects every week," plus additional time out of the office knocking on doors, making in-person "cold calls," and attending networking events. (Ex. B, Perry Dep. at 77:17-79:21, 92:1-23, 99:6-19; Ex. D, Dooling Dep. at 92:10-25, 102:17-104:16.) The time that Plaintiffs devoted to sales activities inside the office was directly related to their outside sales activities. Plaintiffs spent such time identifying their own prospective clients, adding the prospects to Defendant's system, and then calling prospective clients on the phone. (Ex. B, Perry Dep. at 86:18-87:14.) *See Olivo*, 374 F. Supp. 2d at 551; *Schmidt*, 598 F. Supp. 2d at 936. In addition to their salaries, Defendant paid both Plaintiffs

---

[5] Dooling also testified that her manager did not have to approve orders and that she entered orders for temporary employees "on [her] own." (Ex. D, Dooling Dep. at 69:23-72:1, 70:2-4.)

[6] In further support of Defendant's position that Perry and Dooling were engaged in exempt outside sales, the Sixth Circuit noted that "Perry testified that her most important duty as a Staffing Consultant was 'selling Randstad services'" and that "Dooling testified that her non-exempt sales duties took up '50 percent of [her] time.'" *Perry*, 876 F.3d at 212. The extensive amount of time that Perry and Dooling spent on sales activities played a major factor in the Sixth Circuit's determination that their exempt matchmaking activities were not their primary duty under the administrative exemption as a matter of law. *Id.*

16

commissions and bonuses based upon their production.  (Ex. D, Dooling Dep. at

26:15-18, 27:2-7; Ex. B, Perry Dep. at 240:5-241:24, 271:16-25.)

Accordingly, the undisputed facts show that the sales work performed by

Perry and Dooling as Staffing Consultants qualified for the "outside sales"

exemption and that Defendant, therefore, is entitled to judgment on claims

pertaining to their work as Staffing Consultants as a matter of law.

### B.      Alternatively, The Duties That Perry And Dooling Performed As MC Staffing Consultants Satisfy The "Combination Exemption"

Even if their duties did not satisfy the outside sales or administrative

exemptions separately (which they do), the work that Perry and Dooling performed

as Staffing Consultants qualifies them as exempt based upon the combination

exemption.  The "combination exemption in the [FLSA] regulations permits

'tacking' of exempt work under separate exemptions to form a combination

exemption."  *Condren v. Sovereign Chem. Co.*, No. 97-3091, 142 F.3d 432, 1998

WL 165148, at *5 (6th Cir. Apr. 3, 1998).  "Thus, for example, an employee

whose primary duty involves a combination of exempt administrative and exempt

executive work may qualify for exemption."  29 C.F.R. § 541.708.

As the Fourth Circuit has explained, the combination exemption applies

"when an employee does not meet the primary-duty requirement of any individual

exemption,"  but "may nonetheless be exempt" if duties meeting separate

exemptions are combined.  *Intracomm, Inc. v. Bajaj*, 492 F.3d 285, 294 (4th Cir.

17

2007).  Indeed, a sales employee is covered by the "combination exemption" if the employee's duties that are "not related to outside sales" are "primarily exempt administrative work."  *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 632 (7th Cir. 2010).

In *Condren*, 1998 WL 165148, at *5, for example, the Sixth Circuit affirmed summary judgment for defendant where, when viewed as a whole, plaintiff's office duties combined with his outside sales duties rendered him exempt.  The Court found that, between his exempt administrative office duties – which alone may not have been extensive enough to be primary – and exempt outside sales duties, the majority of plaintiffs' work duties were exempt.  *Id*. at *4-5.  Thus, even if plaintiff did not meet the administrative exemption alone because his exempt duties were not primary, adding together his exempt administrative duties and his outside sale duties, plaintiff more than satisfied the combination exemption.  *Id*. at *5.

Likewise, when added together, the exempt staffing duties and outside sales duties performed by Perry and Dooling satisfy the combination exemption.  As the Sixth Circuit recognized in this case, "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."  *Perry*, 876 F.3d at 197 (quoting 29 C.F.R. § 541.700(b)).  Perry and Dooling spent far more than half of their time as Staffing Consultants conducting exempt staffing duties and exempt sales duties.  (*See* Ex. D, Dooling Dep. at 50:8-

18

14 (testifying that she spent approximately half of her time engaged in recruiting and staffing duties and approximately half of her time engaged in sales activities).)

As Staffing Consultants, many of Perry and Dooling's staffing duties qualified for the administrative exemption.  Perry and Dooling did "not simply check off a few minimal requirements" for client positions but exercised "selectivity" in identifying candidates who were an appropriate fit for the client's position.  DOL Op. Ltr. FLSA 2005-45, 2005 WL 3308616 at *1, *3 (Oct. 25, 2005).  In fact, Perry described her job as "sort of like your own business."  (Ex. B, Perry Dep. at 52:21-53:11.)  And Dooling testified that her job was "about really knowing your client and really being that true business partner so that you could find that best fit for them, that true fit, so that they're going to come back to you." (Ex. D, Dooling Dep. at 116:16-20.)  Both testified that she had a fundamental duty to find the "best fit" for clients.  (Ex. B, Perry Dep. at 156:12-157:10; Ex. D, Dooling Dep. at 116:2-20.)

Such work plainly requires independent judgment and discretion.  *See Andrade v. Aerotek, Inc.*, 700 F. Supp. 2d 738, 747 (D. Md. 2010) (finding that plaintiff recruiter exercised discretion where she screened and submitted candidates based on their "fit"); *see, e.g., Hudkins v. Maxim Healthcare Servs.*, 39 F. Supp. 2d 1349, 1350 (M.D. Fla. 1998) (finding plaintiff recruiter exercised discretion and independent judgment in recruiting nurses, placing nurses with

19

defendant's clients, and "approving higher rates of pay," "counseling and disciplining," and participating in termination); *Gonzales v. Barrett Bus. Servs., Inc.*, 2006 WL 1582380, at *20 (E.D. Wash. June 6, 2006) (finding that hiring, scheduling, disciplining, and termination responsibilities required exercise of discretion and independent judgment); *Goff v. Bayada Nurses, Inc.*, 424 F. Supp. 2d 816, 823 (E.D. Pa. 2006) (scheduling and assigning nurses, finding nurses to fill emergency needs, matching up patients with specific nursing skills, and hiring and firing required the use of discretion and independent judgment).

Indeed, the Sixth Circuit already held here that the "matchmaking" duties performed by Perry and Dooling, which required them to determine "fit," required exercised sufficient discretion and independent judgment to qualify as exempt. *Perry*, 876 F.3d at 208, 212. Although the record did not contain sufficient evidence for the Sixth Circuit to find that such functions occupied a sufficient amount of time to render Plaintiffs' time as Staffing Consultants exempt as a matter of law, the time that Perry and Dooling spent on these exempt matchmaking duties as Staffing Consultants, combined with the time they spent on exempt sales functions, easily exceeds the required threshold. Indeed, the Sixth Circuit found that Perry and Dooling spent at least some time on these exempt tasks, *id.* at 212, and that they spent around half of their time performing sales functions. *Id.* When "combined," the recruiting and staffing function exempt under the administrative

exemption, and the sales duties exempt within the meaning of the outside sales exemption, easily exceeds 50% of the time that Perry and Dooling spent working as Staffing Consultants.

The undisputed evidence shows that, tacking their duties together, Perry and Dooling spent more than 50% of their time performing exempt staffing duties and exempt sales duties. Accordingly, summary judgment is appropriate on their misclassification claims.

### C. The Undisputed Evidence Shows That, While Lane Held The Title Of TAS, She Worked As An Exempt Account Manager

Summary judgment is appropriate on any claim from Lane that she was improperly classified during the time that she held the title of TAS. Although, as Defendant previously advised this Court, it classified the TAS position as exempt (ECF No. 54 at 37-38), Plaintiff Lane does not claim that she worked as a TAS. The undisputed record demonstrates that, during the time she held the TAS job title, she performed the same duties as an Account Manager.

As the Sixth Circuit has recognized, actual duties – not labels and titles – are dispositive of whether an exemption applies. *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 503-04 (6th Cir. 2007) (noting that the court must focus on evidence regarding the actual job duties of the employee rather than more general job descriptions); *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 688-89 (6th Cir. 2001); *see Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 756 (W.D. Mich. 2003) (stating

21

that the "Court must look beyond labels and descriptions and also inquire into the particular facts of the actual work performed."); *see also Gold v. New York Life Ins. Co.*, 730 F.3d 137, 145 (2d Cir. 2013) ("FLSA regulations are explicit that the determination of an employee's exemption status must be based on the specific employee's actual primary duties, not on his or her title or position").

Lane admitted that, upon Defendant's acquisition of her prior employer, she "started off as a talent acquisition specialist for probably three or four weeks, until they officially got everything set up in the computer and so forth." (Ex. C, Lane Dep. at 13:16-14:3.) She admitted that, although she had the title of talent acquisition specialist "in the HR computer," "that was not what [her] job description reflected." (*Id.*) Indeed, Lane admitted that, during the time Lane held the TAS title, she performed the duties of an Account Manager. (*Id.* at 37:2-38:4.) When her titled changed from TAS to Account Manager, her duties remained the same: "It was the same duties that I was doing in concept before. I just received a pay increase, which was something that as I was coming up on an anniversary anyways that my boss was trying to do. . . . I was still recruiting and handling payroll, handling hiring paperworks, interviewing, working with clients, everything that I was used to doing on the Todays side. Nothing changed other than the way that Randstad structured it." (*Id.* at 37:2-38:10.)

This Court previously held that Lane's primary duties as Account Manager

satisfied the administrative exemption (ECF No. 94, at 9-10), and the Sixth Circuit affirmed that holding. *Perry*, 876 F.3d at 210. Because Lane admitted that her duties were the same when she held the titles of TAS and Account Manager, and this Court and the Sixth Circuit have found that her Account Manager duties qualified for the administrative exemption, the duties performed by Lane while she held the TAS title also satisfy the administrative exemption. Consequently, to the extent Lane claims that she was misclassified while working under the title of TAS, the undisputed evidence demonstrates that Defendant is entitled to summary judgment on such claim.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its Renewed Motion for Summary Judgment in its entirety and enter judgment in Defendant's favor on all of Plaintiffs' remanded claims.

DATED: March 1, 2018

Respectfully submitted,

RANDSTAD GENERAL PARTNER (US) LLC

By:   /s/ Gerald L. Maatman, Jr.

Jeffrey B. Morganroth
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Ave., Suite 200
Birmingham, Michigan 48009-5310
Telephone: (248) 864-4000
Facsimile: (248) 864-4001

Gerald L. Maatman, Jr.
Jennifer A. Riley
SEYFARTH SHAW LLP
233 South Wacker Dr., Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

23

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on this 1st day of March

2018, he caused the foregoing DEFENDANT'S RENEWED MOTION FOR

SUMMARY JUDGMENT and MEMORANDUM OF LAW IN SUPPORT OF

ITS RENEWED MOTION FOR SUMMARY JUDGMENT to be filed with the

Clerk of the Court using the CM/ECF System, which will send notification of such

filing to all counsel of record, including the following:

| | |
|---|---|
| **Barry S. Fagan (P34275)** | **Robert W. Kelley** |
| **Jennifer L. McManus (P65976)** | **John J. Uustal** |
| DIB AND FAGAN, P.C. | KELLEY UUSTAL |
| Attorney for Plaintiff | Attorney for Plaintiff |
| 25892 Woodward Avenue | Courthouse Law Plaza |
| Royal Oak, MI  48067-0910 | 700 S.E. 3rd Avenue, Suite 300 |
| (248) 542-6300 (Phone) | Fort Lauderdale, FL  33316 |
| Email:  bfagan@dibandfagan.com | (954) 522-6601 (Phone) |
| Email:  jmcmanus@dibandfagan.com | Email:  rwk@kulaw.com |
| | Email:  jju@kulaw.com |

**Jordan Lewis**
**Jordan Lewis, P.A.**
Attorney for Plaintiff
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
(954) 616-8995 (Phone)
Email:  jordan@jml-lawfirm.com


_____ /s/ Gerald L. Maatman, Jr. _____
                Gerald L. Maatman, Jr.

42697492v.9