UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH PERRY, ERIN LANE,
SUHAIMA CHOUDHURY, and
AIMEE DOOLING,

    Plaintiffs,                               Case No. 14-11240

v.                                              John Corbett O'Meara

RANDSTAD GENERAL PARTNER
(US) LLC,

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant Randstad General Partner (US) LLC's renewed motion for summary judgment, filed March 1, 2018, which has been fully briefed. For the reasons explained below, Defendant's motion is granted in part and denied in part.

**BACKGROUND FACTS**

Plaintiffs Judith Perry, Aimee Dooling, and Erin Lane claim that they were mis-classified as exempt from the overtime requirements of the Fair Labor Standards Act by their former employer, Randstad General Partner (US), LLC ("Randstad"). Randstad is a staffing company that recruits employees or "talent"

for its clients. Plaintiffs worked for Randstad at its branch in Troy, Michigan, which focuses on recruiting and placing temporary employees in various office and administrative positions.

Plaintiffs held several different positions while they worked at Randstad, including Talent Acquisition Specialist, Account Manager, and Staffing Consultant. Plaintiffs' base salaries ranged from $32,000 to $48,125, and they were also eligible for commissions and bonuses. Randstad classified Perry, Dooling, and Lane as exempt from the FLSA overtime requirements.

In granting Defendant's first motion for summary judgment, the court agreed that Plaintiffs were exempt and found that they met the requirements of the administrative exemption while working as Account Managers, Assistant Branch Manager, and Staffing Consultants. Although Defendant also argued that Plaintiffs were exempt under the outside sales and combination exemptions, the court did not reach those arguments. On appeal, the Sixth Circuit affirmed in part and reversed in part, finding that Dooling and Perry's duties as Staffing Consultants did not satisfy the administrative exemption. Defendant reasserts its argument that the work performed by Perry and Dooling as Staffing Consultants satisfies the outside

sales and combination exemptions.[1] Defendant also contends that the duties performed by Lane as a Talent Acquisition Specialist qualified her for the administrative exemption.

As Staffing Consultants, Perry and Dooling were responsible for selling Randstad's talent placement services to clients and then recruiting candidates to fill positions.[2] Although the Sixth Circuit found that Perry and Dooling engaged in "matchmaking" duties that fell within the administrative exemption, it determined that such duties were not necessarily their "primary" duties. Perry v. Randstad General Partner (US) LLC, 876 F.3d 191, 212 (6th Cir. 2017). The court found that "a reasonable trier of fact could find that Perry's and Dooling's primary duties during their time as Staffing Consultants were their non-exempt sales and routine recruiting tasks, not their exempt matchmaking duties." Id.

The Sixth Circuit noted that Perry believed "her most important duty as a Staffing Consultant was 'selling Randstad services.'" Id. at 200. "Based upon the estimates of time spent on various tasks Perry offered during her deposition, she

---

[1] Plaintiffs argue that Defendant waived these arguments by failing to raise them at the Sixth Circuit. The court has ruled that there was no waiver and finds no basis to revisit that decision. See Docket No. 124 (order dated March 1, 2018).

[2] The court will consider Perry's time as a Staffing Consultant and Senior Staffing consultant together, because her duties did not significantly change when she was promoted to Senior Staffing Consultant. See Perry, 876 F.3d at 202.

spent at least five hours per day on sales activities, perhaps more." Id. at 212.

Dooling testified that her "non-exempt sales duties took up '50 percent of [her] time.' She spent the rest of her time on a mix of exempt and non-exempt recruiting and matchmaking duties." Id.[3] From Dooling's perspective, "there wasn't one activity that was more important over another. All of your responsibilities were important." Id. at 206.

According to the Sixth Circuit,

> Perry estimated that, as a Staffing Consultant, she spent two hours or more per day "prospecting" – calling clients and prospective clients about potential openings. She spent about an hour each day visiting clients and prospective clients in person. Perry spent about another 4.5 hours per month taking clients and prospective clients of her choosing out for meals. Perry also spent 2-3 hours per month at networking events. It was not clear how the remainder of her time was divided. . . . In practice, Perry typically worked from 7:00 a.m. to 5:30 or 6:00 p.m. and ate lunch at her desk. She worked some Saturdays and averaged 55 hours per week.

Perry, 876 F.3d at 202. Once a client hired Randstad to fill a position, Perry would recruit appropriate candidates to interview and hire. See id. at 201. Perry would

---

[3] The Sixth Circuit identified "exempt" and "non-exempt" duties in the context of whether such duties fit within the requirements of the administrative exemption, which was the issue before the court. See Perry, 876 F.3d at 210 (finding Staffing Consultants' sales activities to be non-exempt). The Sixth Circuit expressly declined to consider whether any other exemptions applied and did not consider whether the duties of a Staffing Consultant would be considered "exempt" under other exemptions, such as the outside sales or combination exemptions. See id. at 212 n.9.

also check in on placements to ensure that the relationship was working. Id. 202.

As a Staffing Consultant, Dooling was "required to sell 50 percent of the time as well as recruit 50 percent of the time." Id. at 205.

> Selling meant "going out and finding new business," including "lots of phone calls, lots of cold-calling" and prospective client visits, if she was able to set them up. Dooling was also responsible for sending out "lots of marketing material," much of which Randstad required her to hand-address or add a personal note to. She was required to reach out to prospective clients in her assigned territory that met Randstad's criteria. She used Randstad's database of potential contacts, and also conducted internet research and did cold calls to add new prospective clients to the database herself. Dooling also knocked on the doors of potential clients several times per month; when she did so, she would be away from the office for approximately half a day.

Perry, 876 F.3d at 205.

Lane began working for Today's Office Professionals in April 2010 as a staffing consultant. Today's Office Professionals was purchased by Randstad in December 2011, at which time Lane's title became Talent Acquisition Specialist. Randstad does not classify Talent Acquisition Specialists as exempt. Randstad argues, however, that although Lane was a Talent Acquisition Specialist, she actually performed the same duties as an Account Manager, which the Sixth Circuit found qualified for the administrative exemption. See Perry, 876 F.3d at 208-209.

Lane testified that she started out at Randstad as a Talent Acquisition Specialist, "even though that's not what my job description reflected. Just all of us that were transferred over were given that title in the HR computer to begin with, until they fixed it." Lane Dep. at 13-14. She became an Account Manager in February 2012, but she was doing "the same duties that I was doing in concept before. . . . Nothing changed other than the way Randstad structured it." Id. at 37-38. Lane explained that she "did not function as a true talent acquisition specialist." Id. at 39.

## LAW AND ANALYSIS

### I.     Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

An employer's entitlement to an exemption under the FLSA is an affirmative defense. See Renfro v. Indiana Michigan Power Co., 497 F.3d 573, 576 (6th Cir. 2007). The employer has the burden of establishing the elements of

the exemption "by a preponderance of the evidence." Id.  Although cases have recited the principle that exemptions are to be "narrowly construed against the employer," the Supreme Court has recently rejected this standard.  "Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a "narrow") interpretation.'"  Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018).

## II.     Outside Sales Exemption

The outside sales exemption applies to an employee whose "primary duty" is "making sales" or "obtaining orders or contracts for services" and "who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500.  Any "work that furthers the employee's sales efforts also shall be regarded as exempt work." Id.  Examples of work that furthers an employee's sales efforts includes "completing sales-related paperwork, prospecting customers, engaging in a wide variety of marketing efforts including creating customer contact cards and promotional materials, following up with customers, [and] scheduling appointments."  DOL Wage Hour Op. Ltr. No. FLSA2007-2, 2007 WL 506575 at *3 (Jan. 25, 2007).

> To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work.

> The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700. "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." Id.

> Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700.

The only disputed issue is whether outside sales work was Perry or Dooling's primary duty. Plaintiffs argue that the record does not support the

application of the outside sales exemption because "there is little information on how Perry's time is divided, and at least 50% of Dooling's time is spent on non-exempt sales work." Pls.' Resp. at 9 (emphasis in original). As the Sixth Circuit noted, however, Perry believed "her most important duty as a Staffing Consultant was 'selling Randstad services.'" Perry, 876 F.3d at 200. "Based upon the estimates of time spent on various tasks Perry offered during her deposition, she spent at least five hours per day on sales activities, perhaps more." Id. at 212. "Dooling testified that her "non-exempt sales duties took up '50 percent of [her] time.'" Id.

Although the Sixth Circuit referred to Dooling's sales activities as "non-exempt," it did so with reference to the *administrative* exemption. In other words, the Sixth Circuit determined that Dooling's sales activities did not involve the exercise of judgment and discretion and did not meet the requirements of the administrative exemption. The Sixth Circuit expressly declined to address whether Plaintiffs' job duties met "any other exemptions." Id. at 212 n.9. The Sixth Circuit did not hold that Dooling's sales activities are "non-exempt" under the outside sales exemption.

The Sixth Circuit concluded that "a reasonable trier of fact could find that Perry's and Dooling's primary duties during their time as Staffing Consultants

were their non-exempt sales and routine recruiting tasks, not their exempt matchmaking duties." Id. at 212. Based upon the amount of time Perry spent making sales and doing sales related-work, as well as her statement that selling Randstad's services was her "most important" duty, Perry's work as a Staffing Consultant falls within the outside sales exemption. The same is true for Dooling, who spent 50% of her time on sales.

### III. Combination Exemption

Perry and Dooling also qualify for the combination exemption. To qualify, they must perform a combination of exempt duties.

> Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section.

29 C.F.R. § 541.708.

Both Perry and Dooling spent about half their time making sales and doing sales-related tasks. In addition, both spent some time engaging in "matchmaking" tasks that involved the exercise of discretion and independent judgment – tasks that the Sixth Circuit found to qualify for the administrative exemption. See Perry, 876

F.3d at 212 (finding Dooling and Perry performed some "exempt matchmaking activities"); 29 C.F.R. § 541.200(a) (requirements for administrative exemption, including primary duties that require the exercise of discretion and independent judgment).

For example, Perry and Dooling determined whether a candidate would be the best "fit" for a position and client. See Dooling Dep. at 113-19; Perry Dep. at 151-58. They had authority to assess candidates and whether to present certain candidates to the client. They worked on "building relationships" with clients, resolving issues between the clients and candidates, and coaching candidates about meeting the client's expectations. See Dooling Dep. at 77-80, 83, 164; Perry Dep. at 160-61. The Sixth Circuit determined that these tasks involved discretion and independent judgment, qualifying them for the administrative exemption. Perry, 876 F.3d at 208.

Although it is not clear how much time either of them devoted to administrative tasks, it is clear that a combination of Perry and Dooling's sales work and administrative work exceeded fifty percent of their time, given that their sales work alone constituted about fifty percent of their time. See Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 632-33 (7th Cir. 2010) (finding that even if employee's primary duty was not outside sales, "the combination of her outside

sales and administrative work exempts her from the FLSA's overtime requirements.") "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Perry, 876 F.3d at 197 (quoting 29 C.F.R. § 541.700(b)). Accordingly, Perry and Dooling's work as Staffing Consultants meets the combination exemption.

## IV. Talent Acquisition Specialist

Plaintiff Erin Lane held the title of Talent Acquisition Specialist from December 2011 to February 2012. At oral argument before the Sixth Circuit, Randstad's counsel stated that Talent Acquisition Specialists are not exempt. The Sixth Circuit determined that "[b]ecause Randstad concedes Lane was not covered by the administrative exemption during her time as a Talent Acquisition Specialist, we need not analyze her duties during that period." Perry, 876 F.3d at 207.

Randstad argues that, although Talent Acquisition Specialists are not exempt, Lane did not function as a true Talent Acquisition Specialist, but performed the same (exempt) duties as an Account Manager. Plaintiffs contend that this issue has been decided by the Sixth Circuit and that Randstad should be bound by its concession at oral argument.

The issue of Lane's status as a Talent Acquisition Specialist was neither briefed before this court or on appeal. See Perry, 876 F.3d at 207 n.7 ("Randstad

says nothing about the duties of Talent Acquisition Specialists or Lane's time in that role in its brief to this court."). Although Randstad's counsel conceded that Talent Acquisition Specialists are classified as non-exempt, it is not clear that Randstad intended to concede that *Lane* was non-exempt during her time as a Talent Acquisition Specialist. Nonetheless, the Sixth Circuit found that "counsel's concession covers Lane's time as a Talent Acquisition Specialist." Id.

When, as here, a case has been remanded by an appellate court "the trial court is bound to 'proceed in accordance with the mandate and law of the case as established by the appellate court.'" Hanover Ins. Co. v. Am. Engineering, 105 F.3d 306, 312 (6th Cir. 1997). "The 'law of the case' doctrine precludes a court from 'reconsideration of identical issues.'" Id. (citation omitted). However, this doctrine is "directed to a court's common sense" and not an "inexorable command." Id. The court may reconsider a ruling "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." Id.

In this case, the parties have not set forth "substantially different evidence." The Sixth Circuit recited Lane's testimony – that Randstad emphasizes here – that she "did not function as a true talent acquisition specialist" and that her duties as

5:14-cv-11240-JCO-MKM Doc # 131 Filed 05/24/18 Pg 14 of 14 Pg ID 3483

Account Manager (which the Sixth Circuit found to be exempt) were "the same duties that I was doing in concept before." Perry, 876 F.3d at 203. The relevant facts were before the Sixth Circuit. Nonetheless, the Sixth Circuit found Lane's time as a Talent Acquisition Specialist to be non-exempt. Under these circumstances, it is not this court's role to second guess the Court of Appeals. Accordingly, the court will deny Randstad's motion with respect to Lane's time as a Talent Acquisition Specialist.

## **ORDER**

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED IN PART with respect to Perry and Dooling's time as Staffing Consultants/Senior Staffing Consultants.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is DENIED IN PART with respect to Lane's time as a Talent Acquisition Specialist.

                                                       s/John Corbett O'Meara
                                                       United States District Judge

Date: May 24, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, May 24, 2018, using the ECF system.

                                                       s/William Barkholz
                                                       Case Manager

-14-